UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KURT L. LEACH,

          Plaintiff,                  No. 18-11814

v.                                District Judge Paul D. Borman
                                Magistrate Judge R. Steven Whalen

JOHN BALINT, ET AL.,

          Defendants.
_____ /

**REPORT AND RECOMMENDATION**

On June 7, 2018, Plaintiff Kurt L. Leach filed a *pro se* civil complaint [Doc. #1] alleging certain constitutional violations arising out of an alleged City of Pontiac ordinance violation and a fee imposed on Plaintiff for the City's removal of a mattress from the curb of his property.  Before the Court is Defendants' Motion for Judgment on the Pleadings [Doc. #23], which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).  For the reasons discussed below, I recommend that the motion be GRANTED and that the complaint be DISMISSED WITH PREJUDICE.

**I.   FACTS**

-1-

Plaintiff's complaint arises from an incident that occurred in the city of
Pontiac on March 16, 2018. Defendant Lee Johnson – Pontiac's sanitation
supervisor – observed a mattress on the ground at the curb in front of Plaintiff's
address. The mattress was prematurely placed at the curb during the week bulk
waste pickup was not available. Mr. Johnson wrote a door-hanger card and hung it
on the front door handle of Plaintiff's address, providing notice that "you must
remove all items from the right-of-way." Mr. Johnson checked a box noting
"Garbage/yard waste/special collection items set out too early/too late. Do not set
out earlier than 7:00 p.m. on the day prior to collection, no later than 7:00 a.m. on
the day of the scheduled collection."  The notice also informed Plaintiff that the
mattress had to be removed from the public right-of-way within forty-eight hours
and that it had to be wrapped in plastic. It stated, "Possible bed bugs–mattress
must be in plastic. Your next bulk pick date is (3-29)"   The notice expressly
warned:

> "This condition is in violation of the City Code, Chapter 94, and must
> be corrected within 48 hours. Failure to do so will result in the City
> correcting the condition and issuing you an invoice for the full cost of
> this service and/or issuing you a violation under this Chapter which
> could result in a fine of up to $500."

The notice also provided a telephone number, stating:

"Please contact the Sanitation Division, **248-758-3700**, if you

have any questions concerning this notice or your refuse collection service."

Mr. Johnson returned to Plaintiff's address three days later on Monday, March 19, 2018 to check whether the mattress had been removed from the right-of-way. He saw that the mattress was still on the ground at the curb in front of Plaintiff's address and contacted Advanced Disposal[1] requesting a waste truck to pick up the mattress. On March 20, 2018, Advanced Disposal removed the bed mattress and billed the City of Pontiac $ 61.73. Subsequently, the City Treasurer sent an invoice in the amount of $61.73 to Plaintiff pursuant to the notice attached to Plaintiff's door and Sanitation Ordinance, Chapter 94.

Plaintiff claims that the City of Pontiac's imposition of the charge for removing the mattress violated his right to "Equal Protection Due Process of Law," and further claims that Defendants retaliated against him for getting a previous building department violation dismissed, in violation of the First Amendment.  Plaintiff seeks "declaratory and injunctive relief," and monetary damages of one million dollars. *Complaint* at 7–9.

## II.   STANDARD OF REVIEW

A motion for judgment on the pleadings pursuant to Fed.R.Civ.P.

---

[1] Advanced Disposal is the City of Pontiac's waste disposal contractor.

12(c) is subject to the same standard of review as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir.1998).

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In *Bell Atlantic Corp. v. Twombley*, 550 U.S 544 (2007), the Court, construing the requirements of Fed.R.Civ.P. 8(a)(2), held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, at 555 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters*

-4-

*v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated

differently, a complaint must "state a claim to relief that is plausible on its

face." *Twombley*, at 570.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court explained and

expanded on what it termed the "two-pronged approach" of *Twombley*.

First, it must be determined whether a complaint contains factual

allegations, as opposed to legal conclusions. "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do

not suffice." *Id.*, at 678, citing *Twombley*, 550 U.S. at 555. Second, the

facts that are pled must show a "plausible" claim for relief, which the Court

described as follows:

> "Determining whether a complaint states a plausible claim for
> relief will, as the Court of Appeals observed, be a context-
> specific task that requires the reviewing court to draw on its
> judicial experience and common sense. But where the well-
> pleaded facts do not permit the court to infer more than the
> mere possibility of misconduct, the complaint has alleged–but
> it has not 'shown[n]'–'that the pleader is entitled to relief.'"
> 556 U.S. at 679 (internal citations omitted).

## III.   DISCUSSION

### A.   Due Process

Plaintiff asserts that by billing him for the removal of the mattress

(which he characterizes as a "tax charge"), the Defendants violated his
Fourteenth Amendment right to "Equal Protection Due Process of Law."
Under the Fourteenth Amendment, of course, due process and equal
protection are separate and distinct concepts.  Based on Plaintiff's factual
allegations however, particularly regarding lack of notice and opportunity to
be heard, it is clear that he is claiming a procedural due process violation.

"The essence of due process is the requirement that 'a person in
jeopardy of serious loss be given notice of the case against him and
opportunity to meet it.'" *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976).
"Notice must be reasonably calculated, under all of the circumstances, to
apprise interested parties of the pendency of the action and afford them an
opportunity to present their objections, and must afford a reasonable time
for those interested to make their appearance." *Mullane v. Central Hanover
Bank & Trust Co.*, 339 U.S. 306, 314 (1950)(internal quotation marks
omitted). In short, "due process requires that [p]laintiffs be given notice and
an opportunity for a hearing . . . ." *Brock v. Roadway Express*, 481 U.S. 252,
261 (1987).

In *Matthews v. Eldridge*, 424 U.S. at 335, the Supreme Court set forth
four factors to consider in determining whether the process provided is

sufficient:

> (1) the private interest that will be affected by the official action;
>
> (2) the risk of an erroneous deprivation...;
>
> (3) the probable value, if any, of additional or substitute procedural safeguards; and
>
> (4) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

In *Shoemaker v. City of Howell*, 795 F.3d 553 (6th Cir. 2015), the Sixth Circuit addressed a due process/notice issue where the plaintiff, who in violation of a municipal ordinance failed to mow the grass and plant growth by the curb of his house, was charged for the City's expense in having the grass mowed.  The City informed the plaintiff of his violation of the ordinance by way of several door hanger notices, which contained the telephone number of City Hall.  The Court found that this type of notice was sufficient under the Due Process Clause:

> "Although the notices in question were not perfect, the Constitution does not require strict adherence to the City's Ordinances. What the Constitution does demand—that the notice as given be reasonably calculated to alert Shoemaker of the charges against him and any avenues available for challenging those charges—was accomplished by the notices distributed by the City."  *Id*. 560-61.

The *Shoemaker* Court went on to determine whether the City's procedures for challenging the ordinance violation were constitutionally sufficient under the *Matthews* test.  First, the Court found that the plaintiff's property interest–a total of $600 in fines and costs–was "relatively minor." *Id*. at 561.  Second, the risk of an erroneous deprivation was small, since the basis of the violation would be obvious by simply observing the height of the grass:

> "Moreover, the Ordinance presents a minimal risk of an erroneous deprivation. If the vegetation on the land in question is allowed to grow beyond eight inches tall, then the owner or occupier of that land has violated the Ordinance. Due to this objective, readily ascertainable standard, there is little chance of a wrongful application of the law."  *Id*.

Third, the Court found that more process or additional procedural safeguards would add little value, noting that Michigan law already provides for judicial review beyond a municipalities predeprivation procedures.  *See* Art. VI, § 28 of the Michigan Constitution.[1]

_____

[1] "All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings, and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record."

Finally, the Court found that the expense to the City of requiring

additional procedures would outweigh any benefit:

> "Requiring additional procedures—such as an evidentiary
> hearing for each unkempt yard prior to the City having it
> mowed—would thus impose substantial costs with little
> corresponding benefit." *Id*. at 562-3 (citing *Silvernail v. Cnty.
> of Kent*, 385 F.3d 601, 605 (6th Cir.2004)).

*Shoemaker* controls the present case.  While there were several door-

hanger notices in *Shoemaker*, the single door-hanger in this case sufficiently

apprised Plaintiff of the ordinance violation.  As in *Shoemaker*, the notice

identified the City ordinance and provided a contact telephone number. This

Plaintiff was given time to correct the violation before the issuance of a

citation. Despite being provided this information, Plaintiff did not follow

up.  As *Shoemaker* found,

> "A simple investigation of the referred-to Ordinances or a call
> to City Hall would have answered Shoemaker's questions, but
> he made no such effort. He 'should not be able to now use [his]
> inaction against the [City] in claiming a violation of due
> process.' " *Id* at 560 (quoting *Dubuc v. Twp. of Green Oak,* 406
> Fed.Appx. 983, 989 (6th Cir.2011)).

As in *Shoemaker*, application of the *Matthews* factors in the present

case weighs against a finding of a due process violation.  The $600 in fines

and costs in *Shoemaker* was found to be minimal. Here, Plaintiff was

assessed $61.73, only one-tenth of that amount, and it is unclear from the pleadings whether he has even paid those costs.  Plaintiff was not issued a citation which would have exposed him to a $500 fine.

As with the grass and plant growth in *Shoemaker*, the violation of the ordinance in this case was objectively obvious.  The uncovered mattress–which possibly contained bed bugs–was plainly set out on the curb on a day when no bulk pickup was scheduled.  There was little or no risk of an erroneous deprivation.  And in view of the Michigan constitutional provision discussed in *Shoemaker*, as well as the burden on the City of imposing additional procedures, the last two *Matthews* factors augur against Plaintiff's claim of a due process violation.

"It is entirely reasonable for a city to prescribe minimum property maintenance standards for purposes of health and safety..as long as the identification of nuisances is based upon non-arbitrary standards."  *Adams v. City of Marshall*, 2006 WL 325250, *3 (W.D. Mich. 2006)(citing *Goldblatt v. Town of Hempstead*, 369 U.S. 590, 594-95 (1962)).  Here, Plaintiff's mattress was set out a week early, obstructing the right-of-way, and became a safety and health concern because of possible bed bugs.  Plaintiff was given a door-hanger notice containing relevant information to

understand why he was in violation of the cited ordinance, a contact telephone number to ask questions about the notice, and the opportunity to remedy the ordinance violation before the City had the mattress removed.

Under the facts of this case, and in view of *Shoemaker* and *Matthews*, Plaintiff has not stated a plausible due process violation.

## B.    Retaliation

Under the First Amendment, a state actor may not retaliate against a person for that person's exercise of a constitutional right. To establish a First Amendment retaliation claim, a plaintiff must show  "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). *See also Paterek v. Vill. of Armada, Michigan*, 801 F.3d 630, 645 (6th Cir.2015); *Davis v. Robert*, 192 F. Supp. 3d 847, 856 (E.D. Mich. 2016).

In this case, Plaintiff alleges that he was given a notice of ordinance violation, and billed $61.73 for the removal of his mattress, in retaliation for

his having successfully prevailed in a previous ticket matter.  Plaintiff is referring to an ordinance violation case in the Fiftieth District Court - Pontiac for debris. The case was dismissed on August 30, 2017.[1]

As to the first prong of the retaliation analysis, successfully contesting an ordinance violation can be considered protected activity.

In this case, the second prong–an adverse action that would deter a person of ordinary firmness from engaging in the protected activity–is more problematic.  While a plaintiff is not required to show "solely egregious" actions, "[a] chilling effect sufficient under this prong is not born of de minimis threats or inconsequential actions...."  *Ctr. for Bio–Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 822 (6th Cir.2007).  Likewise, "trivial inconveniences and minor slights will not amount to an adverse action."  *Hazel v. Quinn*, 933 F. Supp. 2d 884, 890 (E.D. Mich. 2013). *Hazel* recognized that traffic tickets or civil infractions, even those that carry relatively low monetary penalties, can constitute adverse actions because there are "concrete consequences." These might include having points assessed against a driver's license, increased insurance rates, or even the stigma of a petty offense or civil infraction conviction.  In the present

---

[1] *People v. Kurt L. Leach*, 52nd District Court No. 17-1455060-ON.

case, however, although the Plaintiff could have been given a citation that would subject him to a $500 fine, he was not given a ticket and not charged with an ordinance violation.  He was merely required to reimburse the City for the relatively minimal cost of having the mattress removed. There were no collateral consequences.  While it is a close question, I find that under the facts of this case, the Plaintiff has not plausibly pled the element of adverse action.

However, even assuming that Plaintiff has met the first two prongs of a retaliation claim, his case falters on the third prong: he has not shown that the Defendants' actions were in any way motivated by his having prevailed in a separate ordinance violation case.  First, Plaintiff does not allege that the individual Defendants were involved in the previous violation, or that they were aware of the result.  Secondly, if the Defendants were of a mind to retaliate against the Plaintiff, one would think that they would give him a $500 ticket rather than simple billing him 60-odd dollars for having the mattress hauled away.

Third, the other case was dismissed on August 30, 2017, and Plaintiff did not receive the notice of the present violation until March 16, 2018, almost seven months later. This temporal gap tends to refute, not support a

-13-

claim of causal connection.  In *Clark County School District v. Breeden*,

532 U.S. 268, 273–74 (2001)(per curiam), the Supreme Court commented

that "[t]he cases that accept mere temporal proximity between an employer's

knowledge of protected activity and an adverse employment action as

sufficient evidence of causality to establish a prima facie case uniformly

hold that the temporal proximity must be 'very close.' " In *Hafford v.

Seidner*, 183 F.3d 506, 515 (6th Cir. 1999), the Sixth Circuit held that

"[b]ecause the disciplinary actions occurred two to five months after

Hafford filed [EEOC] charges, and are fairly evenly spread over a period of

time, the inference of a causal connection based on temporal proximity

alone is tenuous. Absent additional evidence, this loose temporal proximity

is insufficient to create a triable issue." (Internal quotation marks omitted).

This is not to suggest that a seven-month gap between protected

activity and an adverse action will *always* negate a finding of causality, but

in the present case, as in *Hafford*, Plaintiff has not offered any additional

facts that would plausibly support his retaliation claim.  Instead, his

allegation that the Defendants had a retaliatory motive is based on nothing

more than speculation and his own subjective belief.  In *Riley v. Church*,

874 F. Supp. 765, 769 (E.D. Mich. 1994), aff'd, 81 F.3d 161 (6th Cir. 1996),

the Court found as follows:

> "Plaintiff has merely alleged that retaliation must have been the
> motivation behind defendant's conduct. *However, a mere
> allegation, unsupported by any evidence, is not sufficient to
> defeat a motion for summary judgment.* Additionally, in his
> response to defendant's objections, plaintiff asserts that there
> must be a cause and effect relationship between the filing of the
> grievance and the misconduct charges because of the timing of
> events. The grievance was filed by plaintiff in February 1992
> against Officer Appling. Defendant Church brought
> misconduct charges against plaintiff three months later. *To
> derive a retaliatory intent from this sequence of events is to
> rely upon mere speculation and conjecture*." (Emphasis added).

While *Riley* was decided on summary judgment, its reasoning applies

with equal force to a Rule 12(c) or a Rule 12(b)(6) motion.  Under *Iqbal*,

Plaintiff must plead facts that plausibly support a cause of action.

"Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice."  *Id.*, 556 U.S. at 678.  Because it is

based upon "mere speculation and conjecture," Plaintiff's retaliation claim

fails the *Iqbal* test.

## IV.   CONCLUSION

I recommend that Defendants' Motion for Judgment on the Pleadings

[Doc. #23] be GRANTED, and that Plaintiff's complaint be DISMISSED

WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc.; any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen (14) days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: August 9, 2019